*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0460p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 05-4238

WILLIAM SANDERS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio.
No. 03-00154—James Gwin, District Judge.

Argued: October 27, 2006

Decided and Filed: December 15, 2006

Before: KEITH and McKEAGUE, Circuit Judges; CLELAND, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Terry H. Gilbert, FRIEDMAN & GILBERT, Cleveland, Ohio, for Appellant. Michael L. Collyer, OFFICE OF THE ATTORNEY GENERAL, Cleveland, Ohio, for Appellee. **ON BRIEF:** Terry H. Gilbert, FRIEDMAN & GILBERT, Cleveland, Ohio, for Appellant. Michael L. Collyer, OFFICE OF THE ATTORNEY GENERAL, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

CLELAND, District Judge. On remand for resentencing after *United States v. Booker,* 543 U.S. 220 (2005), the district court held that Defendant-Appellant William Sanders was subject to the sentencing provisions of the Armed Career Criminal Act (the "ACCA"), 18 U.S.C. § 924(e), and sentenced him to a term of imprisonment of 180 months to be followed by three years of supervised release. Sanders now challenges two of the predicate violent felonies on which the district court based its sentencing. For the reasons stated below, we affirm.

_____

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.

On November 25, 2003, a jury convicted Sanders of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). The district court found that Sanders was subject to the sentencing provisions of the ACCA and sentenced him to a term of imprisonment of 188 months to be followed by three years of supervised release. Sanders appealed and this court upheld his conviction but remanded for resentencing in light of *United States v. Booker,* 543 U.S. 220 (2005), *Shepard v. United States,* 544 U.S. 13 (2005) and *Taylor v. United States*, 495 U.S. 575 (1990). *United States v. Sanders*, 404 F.3d 980 (6th Cir. 2005).

On remand, the district court conducted two resentencing hearings, and again found Sanders subject to the ACCA because he had committed three violent felonies. The first violent felony was Sanders's February 2, 1981 robbery conviction in Mahoning County Common Pleas Court, case number 80CR421. The second violent felony was Sanders's 1981 robbery conviction in Trumbull County, case numbers 81CR11 and 81CR12.[1]   For Sanders's third violent felony, the district court found that Sanders had been convicted of two counts of aggravated robbery in 1984 in Trumbull County, case number 83CR359.

After concluding that these three offenses qualified as violent felonies under the ACCA, the district court resentenced Sanders to a term of imprisonment of 180 months to be followed by three years of supervised release. Sanders timely appealed, raising challenges to the first and third predicate violent felonies. He argues (1) that the district court erred in finding the third violent felony because Ohio's aggravated robbery crime does not constitute a violent felony under the ACCA and (2) that the documents on which the district court based its finding that Sanders had been convicted of the first violent felony were inherently unreliable.

## II.

Sanders challenges whether the district court correctly concluded that aggravated robbery under Ohio law constitutes a predicate violent felony under the ACCA and whether the district court properly relied on state court documents in determining that Sanders was convicted of robbery. Both of these challenges rely on the United States Supreme Court's interpretation of the ACCA which we review *de novo*. *United States v. Maness,* 23 F.3d 1006, 1008 (6th Cir. 1994); *United States v. Brady,* 988 F.2d 664, 666 (6th Cir. 1993). Factual conclusions, such as determining what offense Sanders was convicted of in case number 80CR421, are reviewed under a clearly erroneous standard. *United States v. Graves,* 60 F.3d 1183, 1185 (6th Cir. 1995) (citations omitted); *United States v. Beasley,* 442 F.3d 386, 394 (6th Cir. 2006).

## III.

The ACCA mandates a term of imprisonment of fifteen years for persons who are convicted under 18 U.S.C § 922(g), and who have three previous convictions for "a violent felony or a serious drug offense, or both."  18 U.S.C § 924(e)(1).  "[V]iolent felony" is defined as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another; or . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B).

In *Taylor*, the United States Supreme Court held that "burglary" under the ACCA encompasses "generic" burglary and means "any crime, regardless of its exact definition or label,

---

[1]Initially, the district court found that these two convictions should constitute separate violent felonies, but it subsequently consolidated them for purposes of the ACCA.

having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor,* 495 U.S. at 599. Relevant to the instant case, the *Taylor* Court further held that in determining whether an offense constitutes "burglary" for purposes of § 924(e)'s sentence enhancement, the sentencing court could look to its statutory definition to determine if it "substantially corresponds" to "generic" burglary, or the charging paper and jury instructions to see if they "actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id.* at 602. The Court explained:

> We think the only plausible interpretation of § 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense. This categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary.

*Id.* (footnote omitted).

The Court subsequently instructed that in reviewing admitted burglaries (i.e., pleas) a sentencing court could not "look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary." *Shepard,* 544 U.S. at 16. The Court held that "a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* The Court also confirmed that *Taylor's* "categorical approach" applied in all predicate ACCA offenses, not just burglaries. *Id.* at 17, n.2.

Thus, under *Taylor* and *Shepard*, the sentencing court is restricted to applying the "categorical approach," and must look only to certain types of documents when determining whether the underlying offense constitutes a violent felony under the ACCA.

In his first argument on appeal, Sanders contends that the district court erred by concluding that aggravated robbery under Ohio law constitutes a predicate violent felony within the meaning of the ACCA. Specifically, Sanders argues that the third violent felony which the district court attributed to him, the 1984 aggravated robbery conviction in case number 83CR359, does not constitute a violent felony. We disagree.

The jury verdict in 83CR359 indicates that Sanders was convicted of two counts of aggravated robbery, one of which included a specification listed in the indictment. The "Entry on Sentence" states that Sanders had been found guilty of a firearm specification. Sanders first argues that the district court was not allowed to refer to the "Entry on Sentence" in determining the nature of Sanders's conviction, and without referring to the "Entry on Sentence," it is impossible to know the nature of the otherwise unspecified "specification."

We reject this argument and find that the district court properly referred to the "Entry on Sentence" in determining Sanders's sentence. Sanders cites a Fifth Circuit case which held that a sentencing court cannot rely upon abstracts of judgment under *Taylor* and *Shepard. See United States v. Gutierrez-Ramirez,* 405 F.3d 352 (5th Cir. 2005). In *Gutierrez-Ramirez*, the Fifth Circuit agreed with the Ninth Circuit that the district court cannot rely solely on "shorthand abbreviations," prepared not by the court but by the clerk, to determine the nature of the conviction. *Id.* at 358. In this case, however, the district court relied on the jury verdict, which expressly indicated a specification, as well as the "Entry on Sentence" which gave further context to the jury verdict. In reviewing the "Entry on Sentence," it is clear that the document constitutes a final judgment, reflecting the jury verdict and imposing the sentence, and is signed by the sentencing judge–rather

than the clerk, as in *Gutierrez-Ramirez*. The district court was therefore entitled to review this document when determining the nature of the conviction.[2] *Beasley,* 442 F.3d at 393-394 ("Rather, in making its determination, the district court expressly stated that it relied only on the state court judgment and underlying indictment, materials that are explicitly within the scope of the 'categorical approach' approved by the Supreme Court.") (citations and footnote omitted).

Moreover, even if the district court was restricted to the jury verdict indicating only a "specification," the statutory definition of aggravated robbery is sufficient to support the conclusion that the conviction constitutes a violent felony under the ACCA. The relevant statute[3] provides:

> No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:
>
> (1) Have a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;
>
> (2) Inflict, or attempt to inflict serious physical harm on another.

Ohio Rev. Code § 2911.01(A). Sanders admits that the second section of this statute "clearly implicates 18 U.S.C. § 924(e)(2)(B)(i), because it explicitly involves 'the use, attempted use, or threatened use of physical force against the person of another.'" Sanders argues, however, that the first section does not implicate the ACCA because it does not involve a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another; or . . . is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). We disagree, and find that aggravated robbery under Ohio law "involves conduct that presents a serious potential risk of physical injury to another."[4] *Id.*

Sanders correctly recognizes that the first section of aggravated robbery involves possession of a deadly weapon or dangerous ordnance either (1) while attempting or committing a theft offense or (2) in fleeing immediately after such attempt or offense. Sanders argues that aggravated robbery

_____

[2]Sanders cites to *Sanders v. McMackin*, 786 F.Supp. 672, 673 (N.D. Ohio 1992), in which his firearm specification was vacated pursuant to an action under 28 U.S.C. § 2254. As the Government points out, Sanders was given the opportunity to present this evidence below, but failed to do so. Nonetheless, even if Sanders has not waived this issue, the invalidity of the firearm specification does not affect his aggravated robbery conviction. For reasons discussed, *infra*, the aggravated robbery, even without a firearm specification, is a violent felony.

[3]Sanders contends that, because the statute was amended in 1983, it is impossible to know under which version of the statute he was convicted. Sanders does not point out any material changes between the two versions, and the Government correctly cites an unpublished Ohio case, which held that "[a] new version of R.C. 2911.01 took effect on January 5, 1983, the sole change from the old version being to change the offense from a felony of a first degree to an aggravated felony of the first degree." *State v. Goodwin*, No. 83AP-599, 1984 WL 6021, at *1 (Ohio Ct. App. Dec. 6, 1984).

[4]Sanders also points out that various courts have made the unremarkable holding that the first section of Ohio Rev. Code § 2911.01(A) does not involve the use or threatened use of force, as does the second section of § 2911.01(A). Sanders mistakenly argues, however, that these holdings somehow mandate the conclusion that aggravated robbery is not a violent felony under the ACCA. As stated above, and as acknowledged by Sanders, a violent felony under the ACCA is defined as a crime that *either* "has as an element the use, attempted use, or threatened use of physical force against the person of another; *or* . . . is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B) (emphases added). Thus, even if Ohio Rev. Code § 2911.01(A)(1) does not require the use or threatened use of force, it may still qualify as a violent felony if it "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

is therefore analogous to carrying a concealed weapon, which courts have found does not constitute a predicate violent felony. *See United States v. Johnson,* 704 F. Supp. 1403, 1407 (E.D. Mich. 1989), ("[T]he 'carrying a concealed weapon' conviction cannot be classified as a "violent felony" within the meaning of the statutory ACCA definition.")*, aff'd per curiam*, No. 89-1570, 1990 WL 47483 (6th Cir. Apr. 18, 1990); *United States v. Whitfield,* 907 F.2d 798, 800 (8th Cir. 1990) ("Although carrying an illegal weapon may involve a continuing risk to others, the harm is not so immediate as to present[ ] a serious potential risk of physical injury to another.") (quoting 18 U.S.C. § 924(e)(2)(B)(ii) and citing *Johnson*, 704 F. Supp. at 1407) (alteration in original).

Ohio's aggravated robbery crime, however, is distinguishable from a carrying a concealed weapon because the statute requires not only the possession of a deadly weapon or dangerous ordnance, *but also* that the weapon or ordnance is possessed while committing or attempting to commit a theft or while fleeing a theft. The combination of these two elements "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Indeed, it cannot be seriously argued that possessing a weapon or ordnance while committing or attempting to commit a theft does not pose a serious potential risk of physical injury to the victim, any bystanders and, possibly, the responding officer. Likewise, possessing a weapon or ordnance while in flight presents a similar risk to anyone with whom the fleeing person may come into contact.

While Sanders argues that possessing a weapon in flight does not necessarily present a risk of injury, "necessarily" is not the relevant standard. Sanders attempts in vain to distinguish *United States v. Martin*, 378 F.3d 578 (6th Cir. 2004), where this court found that fleeing and eluding under Michigan law was a "crime of violence" for purposes of § 2K2.1(a)(4)(A). Although *Martin* involved analysis of a different statutory provision, the Sixth Circuit employed the "categorical approach" to determine that fleeing and eluding involved "conduct that presents a serious potential risk of physical injury to another." *Id.* at 582. Notably, the court stated:

> That the Michigan fleeing-and-eluding statute may "be violated by conduct that is passive, non-violent, and non-threatening," does not demand a different conclusion. The Guideline defines offenses presenting a "serious *potential* risk of physical injury" as crimes of violence; it does not require that actual injury or violence occur or even that the risk of injury materialize in a given case. To require crimes of violence in all fact patterns to lead to a violent or harmful end not only would ignore our categorical approach to this inquiry, but it also would read the "serious potential risk of physical injury" language out of the Guideline.

*Id*. at 583 (internal citations omitted) (citing U.S.S.G. § 4B1.2(a)(2)). The ACCA does not require certainty of injury, only that the predicate crime "involve[] conduct that presents a serious *potential* risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B) (emphasis added). As in *Martin*, we find that possessing a dangerous ordnance or deadly weapon while fleeing a theft, or while committing or attempting to commit a theft, presents such a potential risk to others.[5] We therefore affirm the district court's conclusion that aggravated robbery under Ohio law constitutes a violent felony and uphold the district court's calculation of Sanders's third predicate violent felony.

---

[5]We reject Sanders's argument that there may be some limited circumstances when possessing a "dangerous ordnance," such as a firearm muffler, does not present a potential risk of injury in a non-confrontational theft offense, thus precluding a finding that it is a violent felony under Ohio law. We instead find that Ohio's aggravated robbery "substantially corresponds" to the definition of violent felonies under the ACCA. *Taylor,* 495 U.S. at 602 ("[A]n offense constitutes 'burglary' for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant.").

**IV.**

In his second argument on appeal, Sanders argues that the district court improperly found that he had been convicted of the first violent felony, the 1981 robbery conviction in Mahoning County. During resentencing proceedings, the Government provided three documents to prove Sanders's conviction: (1) an indictment that charged Sanders with aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1); (2) a guilty plea stating that Sanders pleaded guilty to robbery as defined under Ohio Rev. Code § 2911.02(A); and (3) a journal entry stating that Sanders's sentence was imposed under Ohio Rev. Code § 2911.01(A)(1) and "reduced to burglary" under Ohio Rev. Code § 2911.02(A). Sanders argues that the facially inconsistent documents cannot establish that he was convicted of either robbery or burglary, and the district court should not have counted this conviction as a predicate violent felony.

As discussed above, *Taylor* and *Shepard* require the sentencing court to utilize a "categorical approach" when determining the nature of the underlying offense, and they further hold that in employing that approach, the court is restricted to looking to certain types of documents. *Shepard,* 544 U.S. at 16-17; *Taylor,* 495 U.S. at 602. Sanders contends that the underlying documents in case number 80CR412 were unreliable, and the district court erred in interpreting them to conclude that Sanders had been convicted of robbery. We disagree.

This court has previously held that the "categorical approach" described in *Taylor* and *Shepard* does not apply to the initial factual question of determining the particular offense of which a defendant was convicted. *See Beasley,* 442 F.3d at 392. In *Beasley,* the district court construed a notation of "CA:M2" on the state judgment of conviction as referring to criminal attempt, second degree murder. *Id.* at 389. This Court upheld the district court's factual finding, and rejected the defendant's argument that the district court violated the principles of *Shepard*, *Taylor*, and *Apprendi v. New Jersey*, 530 U.S. 466 (2000):

> In considering whether Defendant's "CA:M2" conviction counted as a predicate offense under § 924(e), the district court did not confront the dilemma addressed in *Taylor* and *Shepard*–namely, how to determine whether a "generic" state court conviction qualifies as one of the offenses enumerated in the Armed Career Criminal Act. Rather, the question here was more rudimentary–the district court was called upon to determine precisely *what* state court offense was reflected in the "CA:M2" notation on Defendant's judgment of conviction. *Taylor*'s categorical approach would apply, if at all, only *after* the district court made this threshold identification of the offense of conviction. *See United States v. Warwick,* 149 Fed. Appx. 464, 468 n. 1 (6th Cir. 2005) (observing that *Shepard* does not govern the distinct, antecedent inquiry "whether the Government has furnished sufficient evidence to prove merely that a conviction exists").

*Beasley,* 442 F.3d at 392. We similarly find that, here, Sanders is not actually challenging the nature of the robbery conviction,[6] but rather the fact of conviction.

---

[6] Although Sanders challenges the nature of an aggravated robbery conviction under Ohio law in his first argument on appeal, his second argument on appeal relates solely to the fact of conviction. To the extent he challenges the nature of the robbery conviction, we reject it. The indictment itself specifies that Sanders was charged with committing a theft offense at a Taco Bell while having a gun on his person either during the theft or in flight. Moreover, under Ohio law, the crime of robbery includes the "use or threat [of] the immediate use of force against another." Ohio Rev. Code § 2911.02(A). Sanders does not directly challenge whether a robbery conviction under Ohio law constitutes a "violent felony" under the ACCA. Nonetheless, to the extent he has not waived the issue, we affirm the district court's conclusion that it does qualify as a violent felony.

The district court properly found that the conviction in case number 80CR421 was for robbery. The indictment charged Sanders with aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1). The guilty plea indicated that Sanders pleaded guilty to robbery as defined under Ohio Rev. Code § 2911.02(A). These two documents are not contradictory, as robbery is a lesser included offense of aggravated robbery. It is true that the journal entry states that Sanders's sentence was reduced to "burglary," but the statutory citations referenced clearly indicate that Sanders's initial aggravated robbery charge under Ohio Rev. Code § 2911.01(A)(1) was reduced to Ohio Rev. Code § 2911.02(A), which is the robbery statute. Thus, all of the documents reflect the fact that Sanders's aggravated robbery charge was reduced to a robbery charge, except for the one inconsistent notation of "burglary" on the journal entry.[7] Further, it is not improper that the district court looked beyond the journal entry to the indictment and guilty plea in order to gain an understanding of the proper context in which to interpret the document. Indeed, even in *Beasley*, the district court referred to the indictment in order to properly construe "CA:M2." *Beasley,* 442 F.3d at 394. Under these facts, we find that the district court utilized "basic common sense" and "reasonably construed" the journal entry as referring to a robbery conviction. *Id.*

Moreover, even if the "categorical approach" of *Taylor* and *Shepard* applied, we would still affirm the district court, because the relevant documents supported the district court's conclusion. *Shepard* expressly allows examination of the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. If anything, the district court should not have relied on the journal entry form, which is the only document that refers to "burglary." The indictment and the guilty plea (which is signed by Sanders and his attorney) are listed in *Shepard* as documents which the sentencing court may consult, and these documents, when construed together, clearly indicate that Sanders was convicted of robbery.

Finally, it is worth noting that regardless of whether Sanders was convicted of "robbery" or "burglary" in 80CR421, the conviction would have counted as a predicate violent felony under the ACCA. Indeed, Sanders does not even argue that "burglary" under Ohio law would not be a predicate violent felony. Instead, Sanders argues that to engage in *any* fact-finding to determine whether the conviction was for "burglary" or "robbery" would violate the principles of *Taylor* and *Shepard.* This argument is rejected, as it is inconsistent with both *Taylor* and *Shepard* themselves, as well as with this Court's prior opinion in *Beasley*.

The district court's conclusion that Sanders's 1981 robbery conviction constituted a violent felony under the ACCA is therefore affirmed.

## V.

For the reasons stated above, we affirm the judgment of the district court.

---

[7]We also reject Sanders's argument that the district court's factual presumptions were erroneous because it found that burglary involves an occupied dwelling. While Ohio Rev. Code § 2911.12(A) does not necessarily require that the "occupied structure" be a dwelling, the district court expressly stated that Ohio's burglary statute "typically" involves a dwelling.