*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0480p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

v.

CHARLES VANHOOK,

> *Defendant-Appellant.*

No. 06-6497

>

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 06-20021—J. Daniel Breen, District Judge.

Argued and Submitted: November 2, 2007

Decided and Filed: December 14, 2007

Before: SILER, MOORE, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Edwin A. Perry, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. **ON BRIEF:** Edwin A. Perry, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Katrina U. Earley, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. Charles Vanhook pled guilty to one count of being a felon in possession of a firearm. The district court sentenced him to 180 months of imprisonment and three years of supervised release after concluding that this offense, together with Vanhook's prior criminal history, caused him to be classified as an armed career criminal within the meaning of the Armed Career Criminal Act (ACCA). Vanhook argues on appeal that the district court erred in determining that he met the ACCA classification. Specifically, he contends that his prior state conviction for the facilitation of a burglary of a building does not qualify as a "violent felony" under the ACCA. He postulates that the facilitation of a burglary of a business does not present a serious potential risk of physical injury to another. Vanhook therefore asserts that his sentence is per se unreasonable under *United States v. Booker*, 543 U.S. 220 (2005), and should be vacated. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

1

# I. BACKGROUND

The ACCA provides that "a person who violates section 922(g) of this title and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, . . . shall be fined under this title and imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1). Section 924(e)(2)(B), in turn, defines a "violent felony" as any crime punishable by imprisonment of more than one year that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another" or "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

This court has further expounded on the ACCA's definition of a violent felony as follows:

> [T]o constitute a "violent felony," it must be shown that the crime is punishable by imprisonment for more than one year; in addition, it must either (a) be specifically enumerated—i.e., burglary, arson, or extortion, (b) involve the use of explosives, (c) contain an element that involves physical force or (d) present a "serious potential risk of physical injury." Crimes in this last category are often said to fall within the "otherwise clause."

*United States v. Sawyers*, 409 F.3d 732, 736 (6th Cir. 2005).

In the present case, Vanhook pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The Presentence Report (PSR) determined that, based on his three prior felony convictions, Vanhook qualified as an armed career criminal under the ACCA (18 U.S.C. § 924(e)) and under § 4B1.4(b)(3)(A) of the Sentencing Guidelines. Based on this determination, the PSR calculated the sentencing range to be a prison term of between 188 and 235 months. Vanhook objected to his designation as an armed career criminal in both his sentencing memorandum and at the sentencing hearing. He based his argument on the contention that one of his prior convictions under Tennessee state law—for facilitation of the burglary of a building—does not constitute a violent felony under the ACCA.

The government countered that facilitation of the burglary of a building does qualify as a violent felony under ACCA's "otherwise clause." *See* § 924(e)(2)(B)(ii) (defining a "violent felony" as "any crime punishable by imprisonment for for a term exceeding one year . . . that . . . otherwise involves conduct that presents a serious potential risk of physical injury to another"). Vanhook acknowledged that this court has previously held that the facilitation of an aggravated burglary qualifies as a violent felony under the "otherwise clause." *See Sawyers*, 409 F.3d at 740. He nevertheless argued that, unlike aggravated burglary (which is defined by Tennessee law as involving the burglary of a residence), the burglary of a business does not categorically pose a serious potential risk of physical injury.

The district court disagreed with Vanhook, concluding that facilitation of the burglary of a building does constitute a violent crime under the "otherwise clause." As a result, the district court held that Vanhook was an armed career criminal and calculated his sentence accordingly. The court explained its reasoning, addressed the 18 U.S.C. § 3553(a) factors, and sentenced Vanhook to 180 months' imprisonment followed by three years of supervised release. This timely appeal followed.

## II. ANALYSIS

### A.    Standard of review

We review de novo a district court's determination that a defendant should be sentenced as an armed career criminal. *Sawyers*, 409 F.3d at 736. As a general matter, courts use a "categorical approach" when determining whether an offense qualifies as a violent felony under the "otherwise clause" of the ACCA. This means "looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id.* (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). A court, moreover, need not determine that "every conceivable factual offense covered by a statute . . . present[s] a serious potential risk of injury before the offense can be deemed a violent felony." *James v. United States*, 127 S. Ct. 1586, 1597 (2007). "Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id.*

Courts may depart from the categorical approach only in the "narrow range of cases" where the statutory definition does not limit the offense to a "generic" burglary, meaning the unlawful entry into a building or other structure (as opposed to a boat or vehicle). *Taylor*, 495 U.S. at 598-99, 602. In these circumstances, a court may look at a limited range of evidence to determine whether the offense has the requisite elements to constitute a "violent felony," thereby qualifying the offense for a sentencing enhancement under the ACCA. *Shepard v. United States*, 544 U.S. 13, 16 (2005) (holding that, in the context of analyzing the potential applicability of a prior burglary conviction, the sentencing court could not look to police reports, but could look to "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented" in order to determine whether the guilty plea supported the conviction for a "generic" burglary, to which the ACCA applies); *Taylor*, 495 U.S. at 602 (explaining that a reviewing court might have to look at the indictment and/or jury instructions in a prior burglary trial to determine whether the jury found the elements necessary to support the ACCA sentencing enhancement for a "generic" burglary).

But the statutory definition usually identifies whether the crime qualifies as a violent felony. Thus, for the most part, courts are required to look only at the elements of the charged crime and at the fact of a conviction to determine whether a defendant is subject to the ACCA sentencing enhancement. *Sawyers*, 409 F.3d at 736.

### B.    Tennessee's crime of facilitation of the burglary of a business qualifies as a violent felony under the "otherwise clause" of 18 U.S.C. § 924(e)(2)(B)(ii)

Vanhook does not dispute that two of his prior convictions qualify as violent felonies under the ACCA. Instead, he argues that his third conviction, the one for violating Tennessee's prohibition against the facilitation of the burglary of a business, cannot be used as a predicate violent felony under the definition set forth in 18 U.S.C. § 924(e)(2)(B)(ii). He therefore concludes that the district court erred by designating him an armed career criminal and that, as such, his sentence is presumptively unreasonable.

Tennessee law punishes three types of burglary: burglary of a habitation (aggravated burglary), burglary of a building, and burglary of a vehicle. Tenn Code Ann. §§ 39-14-402, 403. A person is criminally liable for the burglary of a building if he, "without the effective consent of the property owner[, e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony." § 39-14-402(a)(1). Furthermore, under Tennessee law a "person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility [for that

offense], . . . the person knowingly furnishes substantial assistance in commission of the felony."
§ 39-11-403(a).

Facilitators in Tennessee, however, are not the legal equivalent of accessories before the fact or aiders and abetters, the latter categories being treated the same as principals under the law. *Compare* § 39-11-401(a) and § 39-11-402(2) *with* § 39-11-403(a). Rather, "facilitation of the commission of a felony is an offense of the class next below the felony facilitated by the person so charged." § 39-11-403(b); *see also State v. Fowler*, 23 S.W.3d 285, 288 (Tenn. 2000) ("[F]acilitation is a lesser-included offense when a defendant is charged with criminal responsibility for the conduct of another.").

Vanhook argues, and the government agrees, that the facilitation of the burglary of a building does not qualify as a violent felony under the "burglary" category specifically enumerated in 18 U.S.C. § 924(e)(2)(B)(ii). He asserts that "because [Tennessee's law prohibiting] the facilitation of a felony does not require that the defendant possess the mental state to commit the underlying burglary, . . . the facilitation of the burglary of a business does not qualify as a *per se* violent felony under the generic burglary definition."

The Supreme Court in *Taylor* defined the enumeration of "burglary" in § 924(e)(2)(B)(ii) as the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." 495 U.S. at 598-99. This court in *Sawyers*, moreover, determined that aggravated burglary in Tennessee met the *Taylor* standard for burglary, but facilitation of aggravated burglary did not. 409 F.3d at 737-38. Likewise, we conclude that the facilitation of the burglary of a building does not constitute a violent felony under the "burglary" prong in § 924(e)(2)(B)(ii).

This leaves us with the key question of whether the facilitation of the burglary of a business qualifies as a violent felony under the "otherwise clause" in § 924(e)(2)(B)(ii). Vanhook asserts, without any explanation, that to determine whether his prior conviction for the facilitation of a burglary of a business qualifies as a violent felony, one must necessarily look beyond the statutory definition of the underlying offense. But in so doing, he ignores the essence of the categorical approach, which requires that courts generally not look beyond the statutory definition of a past offense in determining whether it qualifies as a violent felony under § 924(e). *See James*, 127 S. Ct. at 1597.

He also misapprehends the narrow, exceptional circumstances under which courts may deviate from the categorical approach. *See Taylor*, 495 U.S. at 600. Indeed, as noted above, we may look beyond the statutory definition of a prior offense only when there is no other way to evaluate whether the conviction was a violent felony under the definition provided in § 924(e)(2)(B). *See Shepard*, 544 U.S. at 16 (permitting the use of court documents, but prohibiting the use of police reports, to determine whether the defendant's plea supported an ACCA sentence-enhancing conviction); *Taylor*, 495 U.S. at 602 (authorizing the limited use of an indictment and jury instructions where the court could not otherwise determine whether a jury had found the elements of a conviction that would support an ACCA sentencing enhancement).

That is not the case here. Just as this court in *Sawyers* used the categorical approach to determine that facilitation of aggravated burglary qualified as a violent felony under 18 U.S.C. § 924(e), so too can we look in the present case at Tennessee's statutory definition of the facilitation of a burglary of a building to determine whether that crime is a qualifying violent felony. *See Sawyers*, 409 F.3d at 738-39; *see also United States v. Bureau*, 52 F.3d 584, 593 (6th Cir. 1995) (using the categorical approach to conclude that Tennessee's offense of attempted burglary qualified as a violent felony under the "otherwise clause"). Although the elements of the general Tennessee facilitation offense would not qualify as a violent felony under the ACCA, this court has explained that

[a] reading of [Tenn. Code Ann. § 39-11-403, Tennessee's facilitation of a felony] statute indicates . . . that the specific underlying felony that a defendant is found guilty of facilitating provides the substance of the criminal conviction, for to determine whether a defendant is guilty of facilitation and to determine the defendant's sentence, the court must look to the underlying specific felony. Under this statute, a defendant is never convicted of a generic "facilitation of a felony" charge. Rather, a defendant convicted for facilitation is always found to have facilitated a *specific* felony.

*United States v. Chandler*, 419 F.3d 484, 487 (6th Cir. 2005) (emphasis in original). We must therefore consider whether facilitation of the burglary of a building, as it is defined under Tennessee law, constitutes a violent felony under § 924(e). *See Sawyers*, 409 F.3d at 738-39 (stating that, for the purposes of a violent felony determination under § 924(e), "considering the crime *facilitation of aggravated burglary* and not simply *facilitation of a felony* is permissible" (emphasis in original)).

Because the statutory definition of the facilitation of a burglary of a building is clear and unambiguous, *see* Tenn Code Ann. § 39-11-403 (facilitation of a felony), and § 39-14-402(a)(1) (burglary of a building), we simply need to examine the relevant statutory elements in order to determine whether Vanhook's prior conviction constituted a violent felony under § 924(e)(2)(B)(ii). *See Sawyers*, 409 F.3d at 736. Under the categorical approach, then, we must determine "whether the conduct encompassed by the elements of [facilitation of the burglary of a building], in the ordinary case, presents a serious potential risk of injury to another." *See James*, 127 S. Ct. at 1597. We need *not* determine that every conceivable facilitation of the burglary of a building involves a serious potential risk of injury. *See id.* Rather, a determination that "most instances of an offense involve a serious potential risk of injury" is sufficient to support the conclusion that the crime constitutes a violent crime under the "otherwise clause." *United States v. Johnson*, 246 F.3d 330, 333 (4th Cir. 2001).

Vanhook declines to directly address whether the facilitation of the burglary of a business, in the ordinary case, presents the serious potential risk of injury to another. He instead contends that the district court erred in concluding that *Sawyers* had essentially predetermined the outcome of the present case. In support of this argument, Vanhook points to two recent cases in which this court concluded that gun-possession felonies did not constitute violent crimes under the "otherwise clause." *See United States v. Amos*, 501 F.3d 524, 528-29 (6th Cir. 2007) (holding that the simple possession of a sawed-off shotgun did not qualify as a violent crime under the "otherwise clause"); *United States v. Flores*, 477 F.3d 431, 435-36 (6th Cir. 2007) (holding that carrying a concealed weapon did not qualify as a violent crime under the "otherwise clause").

Vanhook is of course correct that this court must conduct an independent analysis to determine whether a violent crime under the "otherwise clause" includes the facilitation of the burglary of a building. But we also note that this court's holdings in *Amos* and *Flores* are not nearly as relevant to that analysis as is the holding in *Sawyers* that the facilitation of aggravated burglary qualifies as a violent felony under the "otherwise clause." *See Sawyers*, 409 F.3d at 740. Indeed, we agree with the district court that Vanhook must successfully distinguish *Sawyers* if he is to prevail. In an attempt to make that distinction, Vanhook claims that "the burglary of a habitation and the burglary of a building involve different potentials for risk of physical injury to another." We find this unsupported assertion, however, to be unpersuasive.

As the district court properly pointed out, this court's finding in *Sawyers*—that facilitation of aggravated burglary qualified as a violent felony—was not premised on the idea that the serious potential risk of physical injury to another created by a burglary arises only in a residential setting. Vanhook does not dispute this. He fails, moreover, to rebut the district court's logical point during

the sentencing hearing that although "going into one's home might provide . . . greater opportunity to involve serious personal injury, . . . that doesn't necessarily exclude or reduce the impact upon someone burglarizing a business." As the district court explained, "one could certainly infer that businesses contain individuals, people on a daily basis just like a home would." The possible presence of people is precisely what creates a serious potential risk of physical injury to another.

Indeed, the Supreme Court's general discussion of burglary in *Taylor* directly undermines the argument that Vanhook advances here:

> Congress singled out burglary [in . . . § 924(e)(2)(B)(ii)] because of its inherent potential for harm to persons. *The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.* And the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape.

495 U.S. at 588 (emphasis added). As the Court in *Taylor* recognized, the burglary of any building, whether a residence or otherwise, poses a serious potential risk of physical injury to another person. Vanhook's attempt to distinguish the two offenses therefore fails.

Nor can Vanhook prevail on the basis that he was convicted of *facilitation* of the burglary of a building and not the actual burglary offense. The *Sawyers* court, in concluding that facilitation of an aggravated burglary qualified as a violent felony, acknowledged that this court has previously held that attempted burglary is a violent felony under the "otherwise clause." *See Sawyers*, 409 F.3d at 738 (citing *Bureau*, 52 F.3d at 593). Because facilitation of a burglary requires that the underlying crime actually take place, the *Sawyers* court reasoned that the facilitation offense carries with it an even greater risk for physical injury than does an attempted burglary. *See id.* The same logic applies here.

Finally, both the court in *Sawyers* and the district court in the present case recognized that facilitation of a violent crime fits within the "otherwise clause" in 18 U.S.C. § 924(e)(2)(B)(ii) because the serious-potential-risk-of-physical-injury standard focuses on the *effect* of certain conduct, not the *intent* motivating that conduct. *See Sawyers*, 409 F.3d at 740. When a person "knowingly furnishes substantial assistance" to someone who actually burglarizes a building, Tenn. Code Ann. § 39-11-403(a), the facilitator contributes to the serious potential risk created by the burglary, whether intended or not. We therefore conclude that Tennessee's crime of the facilitation of a burglary of a building falls squarely under the "otherwise clause" of § 924(e)(2)(B)(ii), and that the district court thus properly designated Vanhook an armed career criminal under the ACCA.

More generally, Vanhook argues that the entire approach to determining whether a particular crime falls within the language of the "otherwise clause" is unfair because it breeds inconsistency and unpredictability. This concern was recently acknowledged by Justice Scalia in *James*. 127 S. Ct. at 1608 (Scalia, J., dissenting) (noting that the analysis adopted by the majority "leaves the lower courts and those subject to [ACCA] to sail upon a virtual sea of doubt"). But we are bound by this court's precedents and by the decisions of the Supreme Court, so Vanhook's argument on this score is more properly addressed to the Supreme Court than to ourselves.

Finally, we note that a sentence that falls within a properly calculated Guidelines range is accorded a presumption of reasonableness. *United States v. Heriot*, 496 F.3d 601, 608 (6th Cir. 2007). The district court in the present case evaluated the Sentencing Guidelines, considered Vanhook's arguments, and imposed a sentence that was actually below the applicable Guidelines range. The 180-month sentence is in fact the mandatory minimum under the ACCA for an armed career criminal. 18 U.S.C. § 924(e)(1). This is presumably why, aside from the claim that he was

improperly designated an armed career criminal, Vanhook does not otherwise challenge the reasonableness of his sentence.  We thus have no reason to scrutinize the issue further.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.